LOTTINGER, Judge.
This is a tort action arising out of an in-tersectional collision which occurred in the City of Lafayette. The petition of the plaintiff, Motors Insurance Corporation, alleges that its automobile was being driven by one of its employees, James O. Crout, in a northerly direction along St. John Street when it was run into by an automobile driven by the defendant, Joseph L. Guidry, at the intersection of this street and West Convent Street. It is averred that the sole and proximate cause of the collision was the negligence of the defendant and, alternatively, that the latter had the last clear chance to avoid the collision.
The answer of the defendant admitted the occurrence of the accident and certain other facts but denied any negligence on the part of the defendant. It averred that the accident was caused solely by the negligence of the plaintiff’s employee, Crout, and alternatively, that ‘ the latter was contributorily negligent. A reconventional demand asked that the' plaintiff and Crout, who was thus made a part to the suit, be condemned to pay the total amount of damages caused his automobile.
After trial in the Lower Court, judgment was rendered dismissing the petition as well as the reconventional demand from which judgment the plaintiff has appealed. The defendant has neither appealed nor answered the appeal taken by the plaintiff.
*625 The trial judge has favored us with written reasons for judgment which we herewith set out in full:
“This suit stems from an intersec-tional automobile collision occurring on January 26, 1954, at West Convent and St. John Streets, in the City of Lafayette. An employee of Motors Insurance Corporation, plaintiff, Mr. J. O. Crout, driving a company vehicle, was proceeding in a northerly direction with his wife a passenger in the car, and defendant, Joseph L. Guidry, was proceeding in an easterly direction along West Convent Street, with his mother and small sister riding with him. St. John Street is a through street having the right of way at this particular intersection.
“Photographs offered in evidence showing the vehicles involved in the collision show damage to the front end of the defendant’s car, with more damage to the right side than to the left side thereof, and damage to the left side of plaintiff’s vehicle commencing about midway of the left front fender to the door post between the -front and rear doors. The damage to this car, from the photographs, appears to be more severe toward the - rear than at the front.
“The collision occurred almost in the center of the intersection. Officer Francis Hebert testified that the front bumper of the Guidry car was about even with the manhole cover which is approximately in the center of the street, then later qualified his statement to state that the water was running out of the radiator óf the Guidry car on the manhole. He further testified that there were skid marks about three feet long behind Guidry’s car, and that it had been moved north so that it rested at an angle of approximately 45 degrees across the road. ' This officer also, measured the distance from the front end of Guidry’s car and the east side of the intersection and found it to be eighteen feet three inches, and from the plat introduced in evidence as exhibit P-1 it will be seen that St. John street is 36 feet in width at the intersection. (The measurement of 3T 6" on the plat as the overall width of the street is not explained and is not taken by the Court as controlling.)
“It is plaintiff’s theory that defendant Guidry drove into St. John street without stopping and at a high rate of speed, and ran into the side of his automobile, and. that .he had no opportunity to avoid .the accident. Mr. Crout states positively that he was driving at a speed of from 20 to 25 miles per hour, and was on the right hand side of the road, in his proper lane; and he states further that there were no obstructions to his view of West Convent street, except for some cars parked on the west side of St. John street,'and ‘you can see over the hood of a parked car as you approach.’ Mr. Crout also testified that he looked to his left and did not see the defendant when about 75 feet from the intersection, then he looked to his right, and finally saw defendant’s auto when he was right on him, a split second before the impact.
- “Defendant, on the other hand, says that he was not familiar with Lafayette, that he was looking for a doctor’s office and as he approached St. John street he looked for a stop sign, that he stopped his car before going into the intersection and then started again when he heard brakes screeching and observed plaintiff bearing down upon him at a speed he estimates to be forty or forty-five miles per hour. That he then immediately applied his brakes and came to a dead stop on the west side of the intersection, but plaintiff, who was actually in the middle of the street, straddling the center line, swerved his car to the right and struck the front of his car while it was standing still, dragging him to the north. He also states that he did not, see plaintiff’s car until’he heard his brakes, when it was ten or twelve yards away. He is' corT *626 roborated in this testimony by his mother, and Mr. Crout is more or less corroborated by his wife.
“The Court will observe that the physical facts indicate that Guidry had stopped his vehicle at the time of the impact, and that the front end of his car was at or very near the center line of St. John Street when he did so. It also appears that Mr. Crout could not have been driving at an excessive rate of speed, but was probably traveling at about 25 miles per hour, a little to the left of the center line of St. John street.
“Regardless of these facts, however, the Court cannot see how this accident would have occurred if either Crout or defendant Guidry had been keeping a proper lookout as they were required to do. Mr. Crout says he did not see Guidry’s car until the moment of the impact, and that he looked to his left and the intersection was clear. Apparently he relied too heavily upon his ability to see into West Convent street over the hoods of the automobiles on the west side of St. John Street, which must have obstructed his vision. In either event, even though he was on a favored street, had he kept a proper lookout after approaching within 75 feet of the corner, he could easily have avoided the accident by passing to the east of Guidry. Guidry, on the other hand, was negligent also in entering the intersection without making sure that his way was clear.
“The Court is of the opinion that this accident and resultant damage, as in most intersectional collisions, was brought about and proximately caused by the joint and concurring negligence of the drivers of the two vehicles, and will deny recovery to either.
“For the foregoing reasons, it is ordered, adjudged and decreed that there be and is hereby judgment herein, dismissing plaintiff’s suit, and rejecting and dismissing the reconventional demand made by defendant against plaintiff and James O. Crout, for the damages sustained by him.” ■
A review of the transcript, the plat filed in evidence and the photographs fail to disclose any manifest error in the findings of the trial judge. Indeed, it appears clear to us, as it did to the trial judge, that had either party been keeping a proper lookout, the accident never would have occurred, and thus was caused by the concurrent negligence of both drivers.
Finding no manifest error in the judgment appealed from, the judgment is hereby affirmed. Appellant to pay cost of appeal.
Judgment affirmed.